This is 412-0614. It's Peeble v. Eric Walker, appearance of William Gregory for the appellant and David Manchin for the appellee. The court asks counsel to be here early in case we can start early. You're both here early and I thank you for that. So we can do that and we appreciate your being here. You may proceed. My name is William Gregory. I am here on behalf of the defendant in this matter, Eric Walker. And as the court is aware, Mr. Walker was arrested for driving on a suspended license and the matter proceeded to trial and he was found guilty on that charge. During the course of the case, we did file a motion in limine seeking that portions of the evidence would be stricken due to the fact that the video evidence of this stop and the offense itself were unable to be produced by the state. And for what reason? For what reason was it not produced? Well, the officers had testified that at the time that the request was made that they were unable to locate the video on this. Now, the issue that we had with that, though, was the fact that Officer Gossmeier, when he testified in regards to the video, I mean, he was clear that him and both Officer Williams were clear that the car was equipped with both audio and video equipment. Officer Gossmeier was not aware of any malfunctions that had occurred in regards to the audio and video equipment in his car. And based on, so I mean, as far as his explanation, he had no, Officer Gossmeier had no explanation as to why no video could be produced. The state also had Officer Williams testify, who was one of the, I guess, tech people, you could call them, for the police station. And Officer Williams testified that when he did a search for the video, he did not find Officer Gossmeier's video in the vault of how they saved these videos. And now, the one thing, though, is that Officer Williams testified that while he didn't find that, that they do have the option of going to the hard drive of the actual car to determine whether or not there was a malfunction in that video. And that he had testified that he had requested that they do that search, but there was no indication that any response or any determination of that search had been completed by the time the trial was conducted. His only testimony was that as of the time of trial, that he had not received any video. But not that there was an actual, you know, that they had actually looked at the video and determined that there was any sort of a malfunction. And there was also an issue in regards to the fact that while he stated that the officers didn't have any role in whether or not the videos were saved or they were not saved, he did testify that Officer Gossmeier, whenever the evidence was placed into the locker as to the system that that police department had, he did not check the evidence box, which would in fact have them save these videos beyond the initial time period in which they would be saved. But neither did the other officer, and his video was available in there, right? That is true. That is correct. However, I mean, as far as exactly how all that worked, I mean, there was no actual evidence that there was really a malfunction here. I mean, the evidence was, Gossmeier said, as far as I'm aware, my video equipment in my car was working. We just, when you asked for it, we couldn't find it. Now, I mean, obviously the defendant has no control over this, other than the fact that there was a video, or there should have been a video, and that there's no evidence that there was a malfunction of this video camera. It was just some sort of a potential error. Do you believe it was on the master computer back at the station, in the hard drive? I don't, well, based on Officer Williams' testimony, it was not on the hard drive at the station. The question is whether or not it was actually on the video camera in the car, on the hard drive, and whether or not that was still there. And there was no real answer ever provided to the state as to whether that was there or not. And so, obviously, the defendant has no control over that. The defendant can't… But wouldn't this be a discovery problem that would be taken up before trial? Well, it was taken up before trial. I mean, that was part of the motion in Lemonade. And then that request was made, and actually the trial was even continued in order to allow them to bring in Officer Williams and do the additional investigation. And then when we came back, there still was no real answer as to whether or not that video was on that hard drive. There was no real answer as to why that video couldn't have been produced from the hard drive of the car. Well, if you've got a motion in Lemonade pending, it seems to me that's… I mean, given your argument in terms of what your client's position is, that's the whole case right there. And it seems to me that we ought to have a definitive answer as to whether or not there exists any kind of evidence regarding this stock. In any place, before we even move past the motion in Lemonade. Well, and I guess I would agree with that, but the judge made a ruling on the motion in Lemonade based off of what we had at that time, and was ready to proceed with the case. And so, that's what we did. So, I mean, we didn't have the full answer to that issue. But, based on the court's denial of the motion, and stating that we're ready to proceed to trial, that's what we did. And so, that's why it's our position that a trial should have been prevented from providing, you know, based off of the client's decision. And the way that they handled that is that the officer should have been prevented from testifying as to what should have been on that video. And I believe that the evidence is absolutely clear that what should have been on that video would have been the entire interaction. Everything that was observed by Officer Gossmeier, according to his testimony, would have been on that video. And so, therefore, we're asking that that testimony, up until the point in which Officer Dobson's video starts, that should have been on that prior video, that all of that evidence should have been excluded from the trial, from the evidence that was able to be presented at trial. What's the standard of review? I'm sorry? What's the standard of review? In regards to a motion to eliminate? In regards to the issue before us. Well, I believe it would be an abuse of discretion in regards to whether or not... You don't mention that anywhere in your brief, do you? I'd have to go back, I'm sorry, I'd have to go back through and reread my brief in total again. I may have not have stated that in there. I think you're supposed to say that in all briefs. I'm going to stand up and stand in the review council. It is, I think you're correct, abuse of discretion, which means that in order to reverse the trial court, we have to conclude that the court's decision in this case was essentially unreasonable. Right. And I guess we're asking you to find that, because, I mean, the court had basically stated that because of the malfunction, that that was the reason that she was not granting our motion to eliminate, was that she determined that there was a malfunction in this video that we don't believe that the evidence supports. That we don't believe that the evidence supports, based off of Officer Williams and Officer Grassmeyer's testimony viewed together, that the evidence supports that there was truly a malfunction that was proven by the state. What do you think, Gav? Well, I think that there was, based off of everything, that there's a video on that hard drive, and that it was never produced, because the state just never really looked for it. They never put the effort into trying to find it. I mean, even Officer Williams said, well, I made a request to Tech to go and take a look at it. That's all he did. I mean, there was no follow-up on that. There was nothing. I mean, it was just, we made a request to go see if it's there, and we just haven't heard anything. So he said, we made a request, and the answer was we couldn't find it. You'd be happy? I believe so, yes. I mean, if they actually came back and said there was an actual malfunction with the video camera in this individual's car, I would think, though, that Grassmeyer would have been advised, this is his car, it's his video. He comes in and says, I'm not aware of any malfunction. I don't know what happened to the video. I know that as far as I'm aware, the video in my car was working just fine, and there should be a video out there somewhere. If it's not there, you need to go talk to Officer Williams because they're the ones that handle that. Have you ever sent a text that didn't arrive? Have I ever sent, I'm sorry? Have you ever sent a text on your phone that didn't arrive to the person you texted to? Yes, I assume I have. The squad car is wireless. Correct. Well, how do we know, and how could you determine other than by looking at the hard drive or the server in the station, whether it was ever received? Because Officer Williams testified that it wasn't received in the station. The station, the wireless recording, the transfer of the video, the wireless transfer of the video didn't occur. I agree. There's no issue. I don't think there's any issue with the fact that the wireless transfer didn't occur. Okay. But the question is, I mean, I guess the issue we have is the fact that the video was still there, though. I mean, it's like if you take, you know, you have a video on your camera, you know, and you want to put it on your computer. Well, if you transfer it over to the computer and it doesn't save properly, that video is not on the computer, but it's still on the camera. So, during the motion in limine, or during the trial, did you assert that the Normal Police Department failed to examine the camera and the squad car to determine if the original or a copy of the, or the original of the video recording continued to exist? Or did you assert that they had destroyed it, and so they shouldn't be able to use any evidence other than the video? Well, I mean, I guess I wouldn't look at the exact evidence. No, but now what you're saying is you think it's technologically possible. Well, that makes sense, I guess, that you could go to the squad car and go to that camera if you did it with dispatch. I suppose at some point those videos are no longer there, because there wouldn't be a place for them to be stored. Well, that cam's not going to store videos that it's taken over the course of years or months or weeks, I wouldn't think. It's got to have some storage issue, doesn't it? I mean, isn't that why they're transmitted wirelessly? Well, they're transmitted wirelessly to a permanent place. So they get to a permanent place. To have a backup. But not just a backup, I mean... Well, and you may be right. I mean, you know, obviously Officer Williams didn't explain it in that manner. The way that he explained it was that it wasn't transferred wirelessly to their server in the station. Right. Okay, and so when they looked there, they could not find it. But what he did then is he asked somebody in tech to go and look at the hard drive on the camera in the car. And that was never a response to that. That didn't occur. So... Did you assert that the state had allegedly destroyed the video and audio recording? Did your motion eliminate it? No. That may have been language that I used. Correct. They destroyed it or failed to preserve it. Well, that's not the same thing, is it? It's... If I failed to preserve something, is it the same thing as I destroyed it? It can be. I mean... I'm having trouble understanding that as a matter of just language usage. Okay. I may be neglectful of not getting it. I may have set it aside. It may not be clear where it is. But when I've destroyed it... Well, I mean, if you don't maintain it and then it's no longer there, it's no longer available, then... I mean, the result... I guess the ultimate result is the same, is that it's no longer there. Whether or not it's no longer there because of neglect or whether it's no longer there because of an actual destruction... Of course, you're now asking the court to focus on the state's destruction of it by filing a motion saying the state destroyed it, are you not? Well, that the state had the evidence and they can no longer produce it or they're no longer producing it. I mean, whether or not... I mean, in reality, whether or not they could even still produce it was never really ultimately proven by the state. They never came out and said, there is no video on that hard drive in the camera in the car. They just said, at this point, we have nothing to give you. But that doesn't mean... I guess to me, I mean, that's failure to preserve the evidence. That's, in essence, destroying the evidence because the evidence is no longer there to be able to present it to the court. And this is absolute... I mean, I guess the other thing is, in this case, is this video evidence would be absolute proof one way or the other of the defendant's guilt. Because if they have a video showing Mr. Walker driving down the street, he's guilty.  then he's innocent. And so, I mean, this is something where, in this particular case, the video is everything in regards to guilt or innocence as far as resolving this case. And so, I mean, I know the state cited several cases in regards to other types of evidence, but, I mean, and I guess I would distinguish those just because of the fact that in this case, I mean, this is absolute proof one way or the other as to whether or not Officer Gosmar's testimony is true or whether or not, you know, the defendant, Mr. Walker's testimony is true. Do we know that the video camera keeps what it's recording? Well, I would, I guess, as the Defendant's Counsel, I would assume that it must because otherwise, why would Officer Williams have requested that the Tech Department go and review the hard drive of the camera? There has to be some sort of process where it saves us for some period of time and that it's there. I mean, obviously, it has to be there initially because otherwise there's nothing to transfer wirelessly to the hard drive. Did Williams testify? I'm sorry? Williams testified? Yes, Officer Williams testified. Did you ask him that question? Did I ask him which question? Does the camera keep... I didn't ask him how long it kept it. I mean, what we had asked him, what he had stated was that he had made a request to them in regards to checking the hard drive of the actual camera in the car and that there, you know, and at that point, at this point, there was no response. So what do you think happened? I mean, if you're asking my opinion in regards to what happened is that the video didn't transfer wirelessly but that there's no reason why it wasn't still on that camera if, in fact, you know, I mean, based off of Gosmeier's testimony that the camera was, as far as he was aware, working properly. When was the issue first raised about getting the video of this incident? It would have been about two months after. Okay. At that point, it was the first indication, apparently, having had this raised, that it didn't transfer from the camera to the video recording device at the station. Right. It seems to me, I'm not much of a technological guy here at Council, so bear with me on this, but it seems to me that up to that point, all we know is the question was raised, is it on, was it transferred, and the answer is no. Your argument seems to imply that the camera, which recorded it two months earlier, still had it within the camera. I don't know that to be the case. And it seems to me you may have a good point about why didn't the State, or the police, or State Security, or somebody, obtain this off the camera, but that presumes that it's still there. And before we can conclude, or conclude that the trial judge abused the court's discretion, we need to know, I would think, whether it was there two months later on the camera at all, wouldn't we? Well, I mean, I guess I would say that that's a fair question, but I would also say that as the defendant in this case, you know, we made the request to the State, and the burden is on the State in this case. And, I mean, the defendant, they're not going to allow the defendant to go out and search through their squad cars to try to see if there's a video on this, or hire somebody to go out there and do that. How about just asking this question to Williams? Well, officer, does this camera have the ability to retain for weeks or two months what it recorded, such as this very incident? If the answer to that question, for instance, let's assume you ask that and the answer is no. It only lasts six hours. That's the extent of the ability to save what is in the camera itself. Then there's nothing further for us to talk about, is there? Well, if in fact that was the evidence... Let's assume that's the evidence. Right, right. Well, I mean, assuming that that's the evidence, then I would... Would you even be here? Well, I would be here on the other issue. I mean, the issue in regards to the key. But the point is, you know, that question wasn't asked by you or anybody else, and in effect you're asking, and the reason I mention this, I'm not a technological guy, maybe I'm missing something here, but it seems to me that the fundamental point you're making here is to ask us to reverse the trial court based upon a supposition about the technological situation, namely that the camera would be able to keep the recording for at least two months, that the record doesn't establish. How can we do that? Well, your light's up, but I've asked you a question. I want you to give me your answer to this and don't feel rushed. Okay. I guess I would just say that the most reasonable conclusion from the evidence, because of the fact that Officer Williams, who is the expert in this issue, two and a half months later, three months later, when he got involved in this case, actually asked the tech people who do know how this works to go back and check and see if they could find this video on the camera. Now, if he in fact knew that six hours later or six days later or a month later that there's no possibility that that video would be on that camera, then why would he do that? I mean, he could have just said, I didn't ask them because I knew that it would no longer be there. He didn't say that. He said when we realized it hadn't got transferred, we made a request for somebody to go out and check and see if it was still on the camera. And? And then never got a response. But, I mean, if he's asking for that, the reasonable assumption from that evidence is that that camera must keep those videos for longer than just six hours or six days or, you know, or a month, because otherwise he's wasting their time, he's wasting his time. Well, maybe he didn't know. Well, he's the person who does this. I mean, he's the person who does this. I mean, he's the person that they actually brought in because he's the one who knows how this works. That was the whole point of him being even in the case was because he was the one that's in charge of this. Did you ever ask him the question, does it have the ability to hold something for more than six hours to keep a recording? I never asked him that specific question. Isn't it your burden, counsel? Kind of like a motion to suppress evidence, aren't you required to establish all the necessary factual matters that are in play? Okay. And, you know, I don't know what he knows or what he doesn't. If I'm the trial judge, maybe I would ask myself, but a lot of trial judges don't like to do that, but it just seems to me we might reverse, if we agreed with you, based upon a technological circumstance that isn't the case. Namely, this camera doesn't last beyond six or eight hours or whatever. Two months later, it's gone from the camera. It was a glitch in getting it transferred to the recording device for whatever reason in the station. And I'm troubled by the idea that you're asking us to reverse when there are these uncertainties in the record. You might say, well, whose fault is that? Well, it's kind of your burden on a motion to eliminate. And as a judge, bar this evidence and here's why, you have to kind of cross all the t's and dot all the i's to do that, don't you? Well, you do, but I mean, the evidence is still, I mean, it still has, I mean, you can draw reasonable conclusions from what was there. And, again, I guess I would just say, I mean, if, in fact, that video was not there, you know, I just, I don't understand why he would have went through the effort of at least going through and requesting the search and doing all of that if, in fact, that was the situation. Okay. Thank you, Counselor. We have a chance to address this again real quick. Mr. Manchin. Good afternoon, Your Honors. May it please the Court. Counsel. In this case, as you mentioned, Justice Stewart, stigma, stigma, sorry. Sir, whatever. It's a bad day for me today. It's okay. It's raining. Anyway, the statute of limit and abuse of discretion was the trial court's decision arbitrary, unreasonable, or no reasonable person agree with the decision taken. The defense argument in this whole case proceeds on a number of different assumptions. One, that a tape, a video was actually made by the camera. Two, that the video should exist or still exist or might have existed. And three, that the state is somehow responsible for it not being there. The testimony of Officer Williams was that the hard drive, and if you look at pages 8 and 12 of Volume 3, Williams testified that the hard drive was pulled manually and searched for the video in question and that he was not able to get any video from Officer Grossmeier's car. So, speculation that there's somewhere on the hard drive is rebutted by that testimony right there. Well, you heard the questions I was asking, Mr. Gregory, and it is the burden of the defense to establish all the necessary factual predicates. But on the other hand, the state's not appearing pro se. Why not ask these questions? Why not make it clear for the record? Why do we even have to speculate about this? Well, I think the state did a good job of establishing that there is no videotape. And the – Well, what about in the camera itself? You've heard all this discussion about the camera. Is it still in the camera? Officer Williams testified that the hard drive was pulled. We don't know what that means. I don't know whether there's a hard drive on the camera or if he's talking about the hard drive at the station. I mean, he reviews it at the station. He can't find it. He tells IT, look for it. IT comes in and actually manually reviews the hard drive, does whatever they do with it, and says, no, we can't find it either. Or they don't even respond because they can't find it, whichever. I would have – if I had been the judge or if I had been the state attorney, I would have said, now, once it's transmitted wirelessly, does a digital – first of all, I'm assuming that this is digital rather than tape. Does the digital recording continue to exist on the camera in the squad car? Is it possible to check either for the officer or somebody else to check and see if that recording is still there? We've heard testimony – or they heard testimony that they can't delete it. The officer could not delete it. But I don't know if that means he can't delete it from his camera, he can't delete it after it's wirelessly transmitted. Probably the camera, too, because he doesn't have to activate the camera to make it work. He's not supposed to have to do anything with the camera at all, right? Correct. It comes on when the lights come on. Supposedly, yes. Yeah, if everything works properly. And there was no testimony that the system was actually working properly at that time. The officer assumed that it was working properly. There's also not even any testimony that he ever activated his lights, although the lights are shown flashing in the one video that is available. So what times the lights were available, were turned on, is unknown. The defense claim is that everything that ever happened that would be on the video is not correct because there is testimony that the officer saw the defendant at a stop sign, could identify him from seeing him at the stop sign, ran his plate, and found out that the owner was suspended. This is before any tape recording would have been started because he would not have had any reason to turn on the flashing lights after he finds out about the license problem. So to say everything that is about the stop is on the video is incorrect. But the standard of review as far as lost or missing evidence is that if the evidence has not been requested by the defendants and has been lost, that there has to be a showing of bad faith and there has to be a showing of something that the information is actually favorable to the defendants. It has to be more than potentially useful. This tape, if it ever existed, is, I think, potentially useful for both sides. So we don't know what is on the tape. We don't know if the defendant's face is visible in the tape driving the car. We don't know what point the video was turned on. We just know whether it would catch the defendant climbing out of the car or not. So it's all speculation to say it's favorable. What about the question that I think Justice Connick was getting at? You're right. Namely, do we know, does the record show? Maybe I should have explained this before. To discuss this, it should deal with me as if I'm the precocious fourth grader because I don't understand this stuff. I don't understand it either. So the question is, if we have a camera in the squad car which is recording this event and automatically is supposed to do it and then it's to be transferred somehow through the air to the whatever depot or storage there is at the police station, right? Is that how it works? Okay. So, do we know two months later when apparently it was made and we can't come up with it, what about the camera itself? Why should we have to speculate that, gee, it probably doesn't have two months worth of stuff on it itself to record it, if it records anything at all? I don't know that it even does that. Maybe it's just literally a conduit, not recording anything but just broadcasting it, for lack of a better word, to the police station. Why doesn't anyone ask that or address that at the hearing? I don't know. Or did they? Did anyone do that? Nobody asked those specific questions. The testimony was that, as far as my recollection of the records, correct me if I'm wrong, the defendant may have been informed that there was no tape before he files a motion to eliminate requesting the discovery of the tape. He asked for the tape after he was told that there is no tape. So this is not a case like Clottis, which is cited by the defendant, where there's a tape. Everybody knows there is a tape. The defendant requests the tape and after the request is made, the tape is destroyed. And that is an entirely different situation from this case, where the defendant makes no showing that there ever was a tape, or that if there was a tape, it's still in the state's position to be presented. And I think this case is on all fours with the cases cited in my brief, and in particular, the case of Schroeder, which is, again, a videotape of a traffic stop where the tape had been destroyed after 60 days, and they said that there's no discovery violation because the state can't disclose what's not available. I think this is virtually the same situation. The trial court's decision to admit this evidence was not of use of discretion, based on the evidence before him. Were there questions that could have been asked? Yes. Would it be nice to have the information? Yes. But based upon the information before the trial court, was his determination unreasonable? And I do not believe that it was.  There is no showing that the tape ever existed. The defendant is assuming it existed based on the testimony of the officer. He was not aware of any problems with the tape. There's no testimony that the camera was ever tested before or after to see if it was actually working. There's testimony that these kind of technological glitches were not uncommon, and that videos that should have been there weren't. And to say that because of a technological problem in preserving the evidence, that the evidence should not come in, I think is an unwarranted discovery sanction for this type of situation. I do note that the defendant's request for the type of sanctions has been shifting somewhat. In the trial court, he asked just to have a bar of any testimony relating to what might be on the tape. He repeats that request in his initial brief. Then in his reply brief, he comes up with a theory that no, dismissing the entire case is the proper sanction. I think the dismissal of the case as a sanction has been waived because it was raised for the first time in the reply brief and was not raised at trial in the original brief. But as far as suppressing evidence because of a discovery violation, I believe that the trial court reached the correct decision because, one, from what was presented to the trial court, the tape did not exist. Two, there's no showing of bad faith on the part of the prosecutor in destroying or on the part of anybody in destroying or losing this evidence. Two, three, that the loss of the tape occurred prior to any request for the tape on the part of the defendant. And it's entirely speculative that this would be beneficial to the defendant. Under the standard for discovery violations based on lost or destroyed evidence, absence of showing of bad faith and absence of showing that it is more than just potentially useful, the trial court was correct. If the court has no further questions. It's been done. Thank you, counsel. Thank you, Your Honor. Mr. Gregory, any rebuttal, sir? I guess I would just state that in regards to the Schroeder case that he referred to, I believe that a large factor in that was that it stated that there was no reasonable probability that the result would have been different had the evidence been preserved and disclosed to the defendant. And, again, I guess I would just say that in this case, I mean, this evidence would have been the crucial piece of evidence in regards to the case. And then in regards to, you know, he had mentioned that, you know, that he was stating that the video was either lost or destroyed prior to it being requested. And I believe that the statutes require that those videos are to be maintained until the case is resolved. And that, you know, so as far as the timing of that, I don't believe that that should be an issue. If the video exists, it has to be maintained until the case is resolved and not, you know, it only has to be maintained once the defendant requests it. And then, obviously, I guess I would just say that, you know, in addition, obviously we brought up the issue in regards to the keys. And I know that that wasn't addressed by the state. You can go ahead. But we believe that, obviously, that's another reason. It's just that clearly, I mean, even the state in their brief, you know, on page 16 of their brief stated that the court recognized that the key to the defendant's car was not found but noted that the key could have been placed elsewhere between the time the defendant exited his car and he was confronted by Officer Gossmeier. However, the video evidence and the testimony of Officer Gossmeier are clear that there was no opportunity for the defendant to have done that and that the court has made an assumption in regards to that evidence that's clearly not supported by the evidence. So we would ask that the defendant's conviction be reversed. Thank you, counsel. Thanks for the advice. We'll see you in recess.